IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

APRYL ZIEGLER,          )
    Plaintiff,          )
                     )
      v.          )          Civil Action No. 3:23cv480 (RCY)
                     )
CHARLES DUNN,          )
    Defendant.          )
_____)

## MEMORANDUM OPINION

This is a personal injury action brought by Plaintiff Apryl Ziegler ("Ms. Ziegler" or "Plaintiff"), wherein she alleges that Defendant Virginia State Police Trooper Charles Dunn ("Trooper Dunn" or "Defendant") recklessly drove 117 miles per hour en route to a traffic accident, caused his vehicle to collide with hers, and caused her serious injuries. The case is before the Court on two motions by Defendant: (1) a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No. 7; and (2) a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 9. The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny both motions.

## I. BACKGROUND

On the night of September 22, 2021, Trooper Dunn was on duty as a "patrol officer" and was patrolling Interstate 85 in or near Brunswick County, Virginia. Compl. ¶¶ 9–10, ECF No. 1. The portion of Interstate 85 that Trooper Dunn was traveling is a four-lane highway with two lanes in each direction and a large natural median in the center. *Id.* ¶ 14. At approximately 2:30 a.m., Trooper Dunn "heard a report on his radio that there was a traffic accident 30 miles away." *Id.* ¶ 10. Trooper Dunn "decided to travel toward the location of the accident," "activated his

emergency lights," and began driving towards the location of the accident. *Id.* ¶¶ 11–13. Ms. Ziegler alleges that "there was no emergency." *Id.* ¶ 16. She also alleges that Trooper Dunn had an "awareness that an emergency situation did not exist." *Id.* ¶ 25. In driving to the accident, Trooper Dunn did not activate his siren. *Id.* ¶ 16.

Trooper Dunn accelerated his vehicle to approximately 117 miles per hour—well above the posted speed limit of 70 miles per hour. *Id.* While traveling in the left lane, Trooper Dunn approached Ms. Ziegler also operating her vehicle in the left lane. *Id.* ¶ 19. Ms. Ziegler alleges that "[u]pon seeing [Trooper] Dunn's lights in her review view mirror, [she] attempted to move out of his way and decided to get into the right lane." *Id.* Ms. Ziegler activated her blinker to move over to the right line, but Trooper Dunn had at this time moved into the right lane to pass Ms. Ziegler. *Id.* Trooper Dunn's vehicle collided with the rear of Ms. Ziegler's vehicle. *Id.* Ms. Ziegler alleges that she sustained injuries and incurred over $400,000 in medical expenses as a result. *Id.* ¶ 33.

## II. PROCEDURAL HISTORY

Ms. Ziegler filed her Complaint on July 31, 2023, alleging two counts: Count I, a claim for a violation of her substantive due process rights pursuant to 42 U.S.C. § 1983; and Count II, asserting claims under Virginia law for simple negligence, gross negligence, and willful and wanton negligence. *See* ECF No. 1. On August 24, 2023, Trooper Dunn filed the two instant motions. First, a Motion to Dismiss Pursuant to Rule 12(b)(1), seeking dismissal of all official capacity claims and the Virginia simple negligence claim. *See* ECF No. 7. Second, a Motion to Dismiss Pursuant to Rule 12(b)(6), seeking dismissal of the § 1983 claim and, as a result, the remaining state law claims. *See* ECF No. 9. Trooper Dunn concurrently filed respective memoranda in support for his motions. *See* ECF No. 8 ("Def.'s 12(b)(1) Mem. Supp."); ECF No. 10 ("Def.'s 12(b)(6) Mem. Supp."). Ms. Ziegler filed her respective responses in opposition on

2

September 7, 2023, *see* ECF No. 13 ("Pl.'s 12(b)(1) Resp."); ECF No. 14 ("Pl.'s 12(b)(6) Resp."), and Trooper Dunn filed his replies on September 13, 2023, *see* ECF No. 15 ("Def.'s 12(b)(1) Reply"); ECF No. 16 ("Def.'s 12(b)(6) Reply").

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) tests a court's subject matter jurisdiction over a claim. Motions under Rule 12(b)(1) fall into two different categories: a facial or a factual attack on jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). On a facial attack, the movant is arguing that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based. *Id.* A factual attack, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction. *Id.* Defendant can only be understood as bringing a facial attack.[1] In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). So, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (3d ed. 2023 update) (hereinafter, "Wright, Miller & Spencer"); *see also Martin*, 980 F.2d at 952. Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

---

[1] In Defendant's words, his 12(b)(1) motion is "based on the facts alleged in the four corners of the Complaint and reasonable inferences made from those facts." Def.'s 12(b)(1) Reply 3, ECF No. 8; *see also id.* 1–2 (arguing his entitlement to dismissal "is evident by the facts alleged in the Complaint").

rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* Ultimately, on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal. Wright, Miller & Spencer § 1357.

## IV. DISCUSSION

Defendant's 12(b)(1) Motion to Dismiss presents two distinct issues of immunity. First, Defendant asks that the Court dismiss "Plaintiff's substantive due process and state law claims brought against Trooper Dunn in his official capacity" on Eleventh Amendment immunity grounds. Def.'s 12(b)(1) Mem. Supp. 1, ECF No. 8. Second, Defendant asks the court to dismiss

Plaintiff's simple negligence claim in Count II based on Virginia state sovereign immunity. *Id.* at 2. Defendant's 12(b)(6) Motion asks the Court to dismiss Plaintiff's § 1983 substantive due process claim in Count I, arguing that Plaintiff has failed to allege sufficient facts to plausibly state a substantive due process violation. *See* Def.'s 12(b)(6) Mem. Supp. 4–8, ECF No. 10. And "[g]iven that the Court should dismiss [that] substantive due process claim," the sole federal law claim, Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claims. *Id.* at 8–9.

## A. Official Capacity Claims — Eleventh Amendment Immunity

Defendant first argues that the Court should dismiss all claims asserted against him in his official capacity as barred by the Eleventh Amendment, pursuant to Rule 12(b)(1).[2] The Court will deny this request as moot.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another State," it is well-settled that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State" under the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citations omitted). "State officers acting in their official capacity are also entitled to Eleventh Amendment protection" in suits for money damages, "because 'a suit against a state official in his or her official

---

[2] The Fourth Circuit has yet to decide "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000). But the "trend" is to view Eleventh Amendment immunity through the lens of Rule 12(b)(1). *See Riddick v. Watson*, 503 F. Supp. 3d 399, 412 n.8 (E.D. Va. 2020) (collecting cases); *cf. Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) ("Although not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is a 'block on the exercise of that jurisdiction.'" (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995)).

capacity is not a suit against the official but rather is a suit against the official's office.'" *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)); *cf. Ex parte Young*, 209 U.S. 123, 155–56 (1908) (Eleventh Amendment immunity does not bar suit against state officials in official capacity seeking only prospective injunctive relief).

The parties do not disagree on the law.  But there is just one problem:  "Plaintiff is not making an[y] 'official capacity' claim[s]."  Pl.'s 12(b)(1) Resp. 2, ECF No. 13.  Plaintiff only brings claims against Trooper Dunn in his *individual* capacity.[3]  *See id.*  Defendant still says that "the Court should grant the Motion and clarify that any claim asserted against Trooper Dunn, in his official capacity, is dismissed."  Def.'s 12(b)(1) Reply 2, ECF No. 8.  The Court declines the invitation and instead will deny Defendant's request to dismiss any official capacity claims as moot.

## B.  Virginia Simple Negligence Claim — Virginia State Sovereign Immunity

Next, Defendant argues that, under the facts as Plaintiff has alleged them, Defendant enjoys Virginia state sovereign immunity,[4] and thus the Court should dismiss Plaintiff's Virginia law simple negligence claim[5] in Count II.  At this stage, the Court cannot agree.

---

[3] Though the Complaint does not specifically state as much, Plaintiff is seeking monetary relief, Compl. ¶ 33, ECF No. 1, and Defendant has asserted a qualified immunity defense in his Answer, *see* Answer 4, ECF No. 19. There is thus no issue with Plaintiff bringing individual capacity claims even though Plaintiff has "not allege[d] capacity specifically."  *See Biggs v. Meadows*, 66 F.3d 56, 61–62 (4th Cir. 1995).

[4] Eleventh Amendment immunity (that is, *federal* state sovereign immunity) and state sovereign immunity are "related but not identical concepts."  *Stewart v. North Carolina*, 393 F.3d 484, 487 (4th Cir. 2005); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002) ("[T]he Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."); *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.").

[5] "[U]nder Virginia law, sovereign immunity is not available to a defendant whose culpability extends beyond mere negligence."  *McLenagan v. Karnes*, 27 F.3d 1002, 1009 n.10 (4th Cir. 1994); *accord James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980) ("A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected [by sovereign immunity].").  So, if the Court finds that Virginia state sovereign immunity applies in this case, that will have no bearing on Plaintiff's gross negligence or willful and wanton negligence claims.

In his motion and opening brief, Defendant invoked Rule 12(b)(1), requesting a jurisdictional dismissal.  Though Virginia state sovereign immunity may "have jurisdictional implications, federal courts in Virginia have applied Rule 12(b)(6) when assessing this defense[.]" *Sisson v. Piedmont Reg'l Jail Auth.*, 2020 WL 1307858, at *3 (E.D. Va. Mar. 19, 2020); *accord Riddick v. Watson*, 503 F. Supp. 3d 399, 425–31 (E.D. Va. 2020); *Adams v. NaphCare, Inc.*, 243 F. Supp. 3d 707, 710–11, 716–22 (E.D. Va. 2017); *Myrick v. NaphCare, Inc.*, 2017 WL 3234384, at *1 n.1, *2-3 (E.D. Va. July 31, 2017).  And in his reply, Defendant appears to recognize the same.  *See* Def.'s 12(b)(1) Reply 3; *see also id.* (citing three cases from this district, all Rule 12(b)(6) cases).  This Court likewise finds that Rule 12(b)(6) is the appropriate standard to apply here.[6]  In line with hornbook Rule 12(b)(6) principles, the Court will dismiss this claim only if Plaintiff's allegations show "on the face of the complaint" that sovereign immunity will be an "insuperable bar to securing relief."  Wright, Miller & Spencer § 1357; *see Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (dismissal appropriate if "face of the complaint" reveals meritorious affirmative defense).

The Virginia Supreme Court has outlined four factors to determine whether an individual that works for an immune government entity (such as a police department) enjoys sovereign immunity against a claim of simple negligence:  (1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether

---

[6] "In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit."  *Colby v. Boyden*, 400 S.E.2d 184, 186 (Va. 1991) (emphasis added).  Rather, Virginia's sovereign immunity "creates a bar to the plaintiff's right of recovery" for simple negligence claims, *Pike v. Hagaman*, 787 S.E.2d 89, 92 (Va. 2016) (quoting *Whitley v. Commonwealth*, 538 S.E.2d 296, 302 (2000)), raising "the degree of negligence which must be shown to impose liability . . . from simple to gross negligence" as a matter of substantive law, *see Colby*, 400 S.E.2d at 186. Conceptually, then, when Virginia sovereign immunity applies, it makes more sense to say not that a court loses its power to hear the case or that Virginia negligence law wholly *does not apply* against a particular defendant on certain facts—the hallmarks of a jurisdictional dismissal under Rule 12(b)(1)—but rather that Virginia negligence law *does apply* and *actively precludes* relief—a failure to state a claim argument properly analyzed under Rule 12(b)(6).

the act in question involved the exercise of discretion and judgment.  *E.g.*, *James v. Jane*, 282 S.E.2d 864 (Va. 1980).  This case, as most do, turns on the fourth factor—whether the challenged acts involved the use of judgment and discretion.[7]  *See, e.g.*, *Dowdy v. Pamunkey Reg'l Jail Auth.*, 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014) (observing that the judgment-and-discretion factor is "typically dispositive"); *see also Adams*, 243 F. Supp. 3d at 718 (observing that "the factor regarding discretion, to the exclusion of other factors, has carried the entire weight of negative sovereign immunity rulings").  "The defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself."  *Heider v. Clemons*, 400 S.E.2d 190, 191 (Va. 1991).

When the sovereign immunity, judgment-and-discretion question arises in the context of government employees driving, Virginia Supreme Court precedent reveals a determinative dichotomy.  The analysis hinges on "whether the means of effectuating the applicable government function involves 'ordinary driving in routine traffic' versus driving that requires a 'degree of judgment and discretion beyond ordinary driving situations in routine traffic'" because it necessarily "embraces 'special risks' in order to effectuate [the] governmental purpose."  *McBride v. Bennett*, 764 S.E.2d 44, 47 (Va. 2014) (quoting *Friday-Spivey v. Collier*, 601 S.E.2d 591, 595 (Va. 2004)).  "Sovereign immunity attaches in the latter situation, but not in the former."  *Id.*

Though this test might appear on its face as an easily applicable, bright-line rule, the Virginia Supreme Court's precedents in this realm make clear that this inquiry is notoriously fact-

---

[7] Plaintiff does not appear to contest that the other factors weigh in favor of a finding of sovereign immunity. In fact, Plaintiff does not engage with the *James* factors at all.  *See generally* Pl.'s 12(b)(1) Resp.  Plaintiff's failure to do so, however, does not automatically entitle Defendant to dismissal; the Court still must assess the sufficiency of the Complaint and whether the sovereign immunity affirmative defense is clearly present.  *Cf. Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 394 n.11 (E.D. La. 2016) (since Rule 12 does not require opposition to be filed in response to motion to dismiss, district courts cannot grant motion based on plaintiff's failure to oppose); *Bennerson v. City of New York*, 2004 WL 902166, at *3 (S.D.N.Y. Apr. 28, 2004) ("A complaint should not be dismissed solely for failure to file opposition to a motion to dismiss under Rule 12(b)(6) . . . without assessing the legal sufficiency of the complaint.").

bound. *See, e.g.*, *Colby v. Boyden*, 400 S.E.2d 184, 187 (Va. 1991) ("[E]ach case must be evaluated on its own facts . . . ."); *McBride*, 764 S.E.2d at 47 ("[T]he application of sovereign immunity in a case involving the operation of a motor vehicle by a government employee is an objective determination considered in light of all the circumstances . . . ."). And in analyzing those cases (most relevant, those involving so-called emergency vehicles, i.e., police cruisers, firetrucks, and ambulances), the Court finds that they turn on facts and circumstances that do not appear on the face of the Complaint and have (understandably) not been thoroughly explored by the parties in their briefs at this early stage of litigation.

In *Colby v. Boyden*,[8] the court found sovereign immunity applied to a law enforcement officer who, with emergency blue lights activated, was chasing at high speed a motorist who had proceeded through a red traffic light. 400 S.E.2d at 185–86. During that hot pursuit, the officer proceeded to cross an intersection against a red traffic light, colliding with another vehicle. *Id.* at 186. Although the officer's municipal employer had promulgated guidelines governing responses to emergency situations, the court recognized that such guidelines could not "eliminate the requirement that a police officer, engaged in the delicate, dangerous, and potentially deadly job of vehicular pursuit, must make prompt, original, and crucial decisions in a highly stressful situation." *Id.* at 187. The police officer, unlike a driver in routine traffic, had to "make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation," "balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective." *Id.*

---

[8] *Colby* is the only Virginia Supreme Court case Defendant cites to argue that immunity should attach on the specific facts alleged here. *See generally* Def.'s 12(b)(1) Mem. Supp.; Def.'s 12(b)(1) Reply.

In *Heider v. Clemmons*, the court found no "special risks"—and, consequently, no sovereign immunity—where a deputy sheriff collided with a motorcycle as he was leaving a residence where he had just served judicial process. 400 S.E.2d 190, 191. The court recognized that, though "every person driving a car must make myriad decisions, in ordinary driving situations the duty of due care is a ministerial obligation." *Id.* There, the deputy sheriff's simple operation of the police vehicle "did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose." *Id.*

In *National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, sovereign immunity applied to a volunteer fireman who was driving a fire truck, with emergency equipment activated, to the site of a car fire on private property. 404 S.E.2d 216, 217 (Va. 1991). The fireman failed to stop before crossing railroad tracks as required by both state law and certain internal safety policies of the volunteer fire company that owned the fire truck. *Id.* As the fire truck proceeded over the railroad tracks, it collided with a train. *Id.* The railroad company asserted that the fireman was not entitled to the defense of sovereign immunity because his act of crossing the railroad tracks without first stopping "was a ministerial act, not a discretionary act to which sovereign immunity attaches." *Id.* at 222. Disagreeing, the court concluded that, like the police officer in *Colby*, the fireman was exercising discretion and judgment about the best means of effectuating the governmental purpose and in doing so was embracing special risks. *Id.*

The Virginia Supreme Court also found "special risks" present in *Smith v. Settle*, 492 S.E.2d 427 (Va. 1997), and *Nationwide Mutual Insurance Co. v. Hylton*, 530 S.E.2d 421 (Va. 2000). In *Smith*, the court held that an ambulance driver traveling to a location where he could establish radio contact with his other squad members to determine whether he was needed at the scene of an emergency was not engaged in "the simple operation of a vehicle in routine traffic,"

because the trip "involved the exercise of discretion and judgment required by a person performing a governmental function in operating a vehicle in response to an emergency." 492 S.E.2d at 430, 430 n.7.  In *Hylton*, the court held that a trooper was entitled to sovereign immunity when, at the time of the accident, he had decided to apprehend a traffic violator even though the officer was just attempting to begin that pursuit and had not activated his lights and siren.  530 S.E.2d at 424.

Conversely, the court found sovereign immunity inapplicable in *Friday-Spivey v. Collier*. 601 S.E.2d 591.  There, a fire truck collided with a motor vehicle after the fire truck technician failed to yield the right-of-way.  *Id.* at 592.  The technician was responding to a "Priority 2" dispatch regarding an infant locked in a vehicle.  *Id.*  And "[d]espite a natural inclination to classify the report of a child in a locked car as an 'emergency,' the facts of th[e] case d[id] not support the conclusion that [the technician's] driving involved the exercise of judgment and discretion beyond that required for ordinary driving in routine traffic situations."  *Id.* at 594.  The court relied on both the applicable protocol and the technician's testimony.  Under the "Priority 2" protocol, the technician "was required to proceed without activating warning devices, i.e., 'no lights and no sirens,' and to obey all statutes governing the operation of motor vehicles."  *Id.* at 592.  And the technician admitted "that, based on what he knew at the time, 'there was no danger' involved in the call to which they were responding and he understood that 'when [he] got a [Priority 2] call, [he was] to respond in a nonemergency manner and conform to all the traffic regulations.'"  *Id.* at 594.  When asked whether "there [was] any difference in the way you respond to a call for a cat in a tree versus an infant locked in a car, according to [the] regulations," he responded, "[my] regulations, no."  *Id.*  On the record there, the court held that the contested driving "require[ed] no significant judgment and discretion beyond that of ordinary driving in routine traffic."  *Id.* at 595.

11

The most recent binding case in this subject area is *McBride v. Bennett*, where the court applied sovereign immunity to police officers who hit and killed a cyclist while responding to a domestic disturbance call.[9]  764 S.E.2d at 453–54, 458.  The officers were assigned to a call, which the dispatcher did not initially declare to be an emergency, and the officers responded by speeding but not activating their emergency lights or sirens.  *Id.* at 453–54.  The court found that in "determining the proper response to a criminal act (e.g., a domestic disturbance) and implementing that response"—in that case, responding "in an emergency manner"—the officers "went beyond 'ordinary driving in routine traffic'" and "exercise[d] their judgment and discretion about the best means of effectuating a governmental function by embracing the requisite special risks," triggering the application of sovereign immunity.  *Id.* at 457.  Even though the officers violated internal policy in their response, the court found that the totality of the circumstances rendered this "a highly stressful situation," and thus it was "th[e] exercise of judgment and discretion, even in violation of policy, that allow[ed] for the invocation of sovereign immunity."  *Id.* at 457–58.

Any attempt to analogize the facts here to the above cases begs a myriad of questions to which the Complaint provides no answers.  What was the nature of the "traffic accident" to which Trooper Dunn was attempting to respond?[10]  Were there injuries?  Was it a non-time-sensitive fender bender?  Was it something else that on its face could suggest some exigency but, given all

---

[9] On the same day as it did *McBride*, the Virginia Supreme Court decided, in an unpublished opinion, *Anders v. Kidd*, applying sovereign immunity to an ambulance driver.  No. 131891, 2014 WL 11398555, *3 (Va. Oct. 31, 2014).  Per Virginia Supreme Court rules, unpublished opinions are "not . . . binding authority;" they are merely "informative."  Va. Sup. Ct. R. 5:1(f).

[10] Plaintiff pleads that there was "no emergency."  Compl. ¶ 16.  But in his opening brief, Defendant alleged that there *was* an emergency.  *See* Def.'s 12(b)(1) Mem. Supp. 2 ("Given the fact that Trooper Dunn was responding to an emergency with potential injuries . . . .").  When Plaintiff accurately noted that this contradicted the Complaint, Defendant walked his position back, stating that it is "immaterial" in the Virginia sovereign immunity analysis at this stage "[w]hether [he] was responding to an 'emergency,' or a 'non-emergency.'"  Def.'s 12(b)(1) Reply 4.  This back-and-forth still provides no information about the accident, and if anything suggests a disagreement about the underlying facts that calls for further factual development.

of the circumstances, still does not support a conclusion that "special risks"[11] existed?  *Cf. Friday-Spivey*, 601 S.E.2d at 594.   What are the specifics of the radio call reporting the accident?  Was the accident explicitly reported as a non-emergency?  What was Trooper Dunn's assessment of the situation?  *See McBride,* 764 S.E.2d at 48 n.3 ("While not dispositive, a government employee's assessment [of the situation] is still relevant to the application of sovereign immunity.").  How did he perceive the radio report and understand the circumstances?[12]  Was any discretion "*necessary to the performance of the governmental function*" in that specific context?  *Heider*, 400 S.E.2d at 191 (emphasis added).  These questions are not necessarily exhaustive nor determinative—they just highlight the fact that so little is known about the particulars surrounding this incident at this procedural posture.

Suffice it to say that to definitively answer the sovereign immunity question, there needs to be more factual development.  The Court is not suggesting that discovery will not reveal details that will trigger the application of sovereign immunity.  It very well may.  But at this point, confined just to the allegations in this Complaint, to conclude as much would be premature.  *See* Wright, Miller & Spencer § 1357 ("[T]he district court in its discretion may . . . decid[e] that a motion for summary judgment—which provides an opportunity for an investigation of the facts surrounding the bare allegations in the pleading—is a more appropriate procedural device to deal with the built-in defense than a motion to dismiss under Rule 12(b)(6).").  For these reasons, the Court will deny Defendant's Motion to Dismiss Plaintiff's Virginia simple negligence claim based on the defense of Virginia sovereign immunity.

---

[11] Defendant uses the term "special risks" just once, when block-quoting *Colby*.  *See* Def.'s 12(b)(1) Mem. Supp. 5.

[12] The Complaint says that Defendant was "aware[] that an emergency situation did not exist."  Compl. ¶ 25.

## C.  § 1983 Substantive Due Process Claim

The Court next considers Defendant's argument that Plaintiff has failed to adequately state a claim under 42 U.S.C. § 1983[13] for a violation of her Fourteenth Amendment[14] substantive due process rights and, thus, that the Court should dismiss Count I.  Viewing the allegations in the light most favorable to Plaintiff, the Court rejects Defendant's argument.

The parties agree that to establish a substantive due process violation, Plaintiff must show that the Defendant's behavior was "so egregious, and so outrageous, that it may fairly be said to shock the contemporary conscience." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020) (quoting *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005)).  The parties disagree, however, on the threshold question of "what level of culpability is required for [Defendant's] actions to be considered 'conscience shocking.'"  *Id.*  (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).

The Supreme Court has "described a 'culpability spectrum' along which behavior may support a substantive due process claim."  *Id.* (citing *Lewis*, 523 U.S. at 848–89).  There are two standards that can support such a claim—the "intent to harm" standard and the intermediate "deliberate indifference" standard.  *Id.*  Determining which standard applies "requires 'an exact analysis of context and circumstances[.]'"  *Id.* (quoting *Lewis*, 523 at 850).  "[U]nder *Lewis*, the intent-to-harm culpability standard applies to officers responding to an emergency call."  *Id.* at 415 (citing *Terrell*, 396 F.3d at 980).  But where the context and circumstances do not reveal an emergency, the deliberate indifference standard can apply.  *Id.*  The Fourth Circuit has explained:

[U]nlike the intent-to-harm standard, th[e deliberate indifference] standard "is

---

[13] "Every person who, under color of any [law,] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ." 42 U.S.C. § 1983.

[14] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV.

sensibly employed only when actual deliberation is practical."  Certainly, time to "reflect on [one's] actions" is a factor in determining whether deliberate indifference is the appropriate standard.  "[L]iability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.  When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking."  Thus, when an officer is able to make unhurried judgments with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims involving driving decisions.

*Id.* (internal citations omitted) (quoting *Lewis*, 523 U.S. at 851, 853; and quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015)).

Defendant insists that the Complaint can only be plausibly read to implicate the higher "intent-to-harm" standard, and because Plaintiff never alleges that Defendant intended to harm her, the § 1983 claim must be dismissed.  *See* Def.'s 12(b)(6) Mem. Supp. 7–8.  Plaintiff does not dispute that she has not alleged that Defendant intended to harm her.  *See* Pl.'s 12(b)(6) Resp. 4, ECF No. 14.  But Plaintiff disagrees that her Complaint does not allow for the application of the deliberate indifference standard.  *See id.* at 4–6.  And, Plaintiff argues, since Defendant does not assert that Plaintiff has failed to allege Defendant's deliberate indifference, her § 1983 claim must proceed past the Rule 12(b)(6) stage.  *Id.* at 4.  At this stage, the Court agrees with Plaintiff.

Viewing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in her favor, the Court cannot agree with Defendant that there is no plausible reading of the Complaint permitting the inference that Defendant "was not responding to an emergency and had time to deliberate his actions."  *Dean*, 976 F.3d at 415.  For one, Plaintiff in fact alleged that "there was no emergency."  Compl. ¶ 16.  And the Complaint includes a suggestion that Defendant was "aware[] that an emergency situation did not exist."  *Id.* ¶ 25.  Additionally, Plaintiff alleged that Defendant "heard a report" of "a traffic accident 30 miles away" and "decided to travel toward . . . the accident."  *Id.* ¶¶ 10–11.  From all of that, one could plausibly infer that the Defendant had some time to reflect before he made that "deci[sion]."  And that inference is further

15

buttressed by Defendant so "decid[ing]" after only "hear[ing] a report," because that suggests that Defendant was not ordered to respond to the accident (otherwise he would not have had that initial "deci[sion]" to make) and thus had more time to think and act than if he had been. *Cf. Dean*, 976 F.3d at 415 (finding deliberate indifference standard applicable even where officer "had been ordered to assist" on a call initially issued as an emergency but demoted to non-emergency shortly after). And one could likewise infer that the Defendant had time to reflect and choose his *manner* of responding—that is, time to think before deciding to drive at 117 miles per hour.

The Complaint includes no specific allegations about the time between Defendant's decision to respond and his collision with Plaintiff. *See generally* Compl. However, Plaintiff alleges that the accident was "30 miles away" from Defendant when he chose his manner of response, *id.* ¶ 10, that Defendant's crash with Plaintiff occurred while on the way to the accident, *id.* ¶¶ 12, 19, and Defendant had been travelling in the left lane before switching over to the right lane, *id.* ¶ 19. Drawing inferences in the Plaintiff's favor at this early, pleader-friendly stage, there is some room to infer that there was some amount of time for Defendant to reflect on his decision to proceed at 117 miles per hour even after he began speeding and before his and Plaintiff's cars collided. All of this is to say that there is a permissible, plausible reading of the Complaint that allows the inference that this was not an emergency situation wherein Defendant had no time to deliberate and consider his actions. On the allegations here, the Court cannot definitively discount the availability of the deliberate indifference standard.

Defendant resists, but he does not convince. Defendant argues that Plaintiff's allegation that "there was no emergency," *id.* ¶ 16, is "conclusory" and "should not be credited," Def.'s 12(b)(6) Mem. Supp. 7. Defendant believes that any suggestion that there was no emergency is "belied by the allegations in the Complaint" that Defendant "'activated his <u>emergency lights</u>' and started traveling towards the location of a '<u>traffic accident</u>.'" *Id.* (emphases in original) (quoting

16

Compl. ¶¶ 10–13).  Though many can be, not every "traffic accident" is necessarily an emergency that precludes an officer from cooly deliberating over a situation.  And it should go without saying, but an officer simply turning on their "emergency lights" (even doing so en route to a traffic accident) does not *per se* render a situation an emergency requiring all decisions to be made under pressure and in haste.[15]  Most detrimental, Defendant cites no caselaw to support his position that these allegations fatally undermine Plaintiff's "no emergency" allegation or prove it "conclusory" and unacceptable at this, the Rule 12(b)(6), stage.[16]

Defendant does not stop there.  He affirmatively argues that he, in fact, "*was* responding to the scene of an emergency—a traffic accident" that, according to him, had a "great[] likelihood of human injury or death, and one that likely required the need for immediate emergency attention."  Def.'s 12(b)(6) Reply 3–4 (emphasis added), ECF No. 16.  And thus, according to Defendant, he "[had] no time to engage in calm, reflective deliberation in deciding how to respond to an emergency call.  Doing so would risk lives."  Def.'s 12(b)(6) Mem. Supp. 7 (alteration in original) (quoting *Unified Gov't of Wyandotte Cnty./Kansas City*, 432 F.3d 1163, 1167 (10th Cir. 2005)).  But for all his grousing about Plaintiff's purportedly "conclusory" assertions, Defendant's contentions that this traffic accident *was* "an emergency," "likely required the need for immediate emergency attention," and that not responding quickly "would risk lives" are just as conclusory.  To adopt Defendant's view of the traffic accident and circumstances underlying it as an

---

[15] On top of making little analytical sense, to so hold (and thus require a plaintiff to show an "intent to harm" whenever an officer had their emergency lights on while driving) could create perverse incentives for officers to turn on their emergency lights—even when the situation did not necessarily call for it—to artificially manufacture an easier defense for themselves in the event an accident occurred.

[16] Defendant cites *Cole v. Jenkins*, 2022 WL 2195451 (M.D. Pa. June 17, 2022), as his only example of a court "reject[ing] similar 'conclusory and general' allegations that the officer was able to make an 'unhurried judgment with time to deliberate.'"  Def.'s 12(b)(6) Reply 5 (quoting *Jenkins*, 2022 WL 2195451, at *5).  But, as Defendant tells it, *Jenkins* involved an officer who personally "observed a motorcyclist . . . exceeding the speed limit," "activated his lights and sirens and engaged in pursuit," and eventually collided with that speeding motorcyclist.  *Id.*  That looks nothing like this case, where (per the Complaint) Defendant simply heard a report of a traffic accident 30 miles away, was not engaged in any sort of hot pursuit, and ended up striking a person who had nothing to do with the matter to which he was responding.  *Jenkins* is thus inapposite.

"emergency" based only on the allegations in the Complaint would require the Court "to 'impermissibly . . . view the facts in the light most favorable to him rather than the plaintiff.'" *Dean*, 976 F.3d at 416 n.5 (alteration omitted) (quoting *Browder*, 787 F.3d at 1082).

The parties' briefing shows that they disagree about the facts of this case.  But a Rule 12(b)(6) motion is not the occasion to resolve factual disputes.  Accepting the factual allegations as true at this early stage of litigation, the Court is not convinced that the Complaint squarely forecloses any plausible inference permitting the application of the deliberate indifference standard.  As that is the sole basis upon which Defendant's motion to dismiss Plaintiff's § 1983 claim rests, the motion as to that count will be denied.

## D.  Supplemental Jurisdiction as to State Law Claims

In his 12(b)(6) motion, Defendant argues that, after dismissing Plaintiff's § 1983 claim, the Court "should decline to exercise supplemental jurisdiction" over any remaining state law claims.  Def.'s 12(b)(6) Mem. Supp. 8.  Because the Court does not dismiss Plaintiff's § 1983 claim here, the Court denies this request as moot.

## V. CONCLUSION

For the reasons detailed above, the Court will deny both of Defendant's Motions to Dismiss.

An appropriate Order shall issue.

_____ /s/

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: <u>February 23, 2024</u>

18